Good morning, your honors. Chad Knight here for BNSF Railway and Mr. Swain. And if I may, I'd like to reserve two minutes for that. All right. Try to watch the clock and watch yourself. Thank you. I'm a police report. The issue here before you today is whether plaintiffs met their burden of proving all of the required elements of the local criteria except for the capital jurisdiction. That two-thirds of the plaintiffs were citizens of Montana when the complaint was filed. That John Swing, a Montana resident, is a significant defendant.  I'd like to start off by addressing briefly a question of waiving. Plaintiffs contend in this case that BNSF has waived arguments regarding all elements of the exception except for principal injuries by not objecting to the magistrate's factual findings. That's not correct. It is psyched to no authority in which subject matter transcription was waived in this manner, and it's not. But regardless, BNSF did object. On its February 2018 objection pleading, BNSF and Mr. Swing asserted that the magistrate's recommendations as to the applicability of the exception and hold were in error, asked for a de novo review of all findings supporting the magistrate's ruling, and asked the court to reject the magistrate's finding and rule that the exception applied, not any one particular element. And the district court read it that way. The district court acknowledged the exception, but ultimately addressed all of the elements of the exception with the exception of principal injuries, which it ultimately addressed after remand by the district court last year. So all these issues are before the court, and I'd like to start with, if I may, the two-thirds requirement. The complaint itself alleges that some undisclosed number of these plaintiffs are not residents of Montana, not citizens of Montana. Plaintiff alleges that they are either former residents or visitors, but it doesn't say how many. Evidence on this issue, of which they bear the burden, is an affidavit signed by a Plaintiff's counsel in which he says, or asserts, that 146, or 76 percent of the 192 plaintiffs' residents of Montana as of the date of the meeting were plaintiffs' children. However, when we look at the evidence that's attached to this affidavit, we see that 48 of these residents are in post-office classes with multiple courts in this jurisdiction have called it not sufficient to establish a residency, much less citizenship. Another 14 are estates. Under Montana Administrative Rule 42.30.101, paragraph 15, a resident estate in Montana means an estate of a decedent who was a Montana resident at the time of the decedent's death. And the evidence doesn't even purport to establish post-office. May I ask you, Mr. Knight, what is your position on the first three issues you raised in your brief, one of which is citizenship with respect to Montana citizens? You didn't object to the magistrate finding and conclusion on these issues. Why wouldn't that be a waiver or a forfeiture? Well, Your Honor, I would refer you to our objection pleading, in which we stated, both at the beginning and end of the pleading, that we were objecting to the magistrate's finding and conclusion that the exception applied, and then specifically said we were requesting an over-review of all factual findings that supported the magistrate's conclusion that the exception did apply. But that kind of general objection doesn't give the District Court or the magistrate any clue as to what you were looking at. Well, Your Honor, I believe it does. We're asking for an over-review of each of the elements in our objection pleading. And the point of this was to put back to the record the briefing that was submitted. And we raised that very issue of the insufficiency of the evident citizenship. I would point out that in the District Court's order the Court did look at that issue. The Court did look at reference the affidavit of counsel and adopt magistrate's finding with regard to that. So it actually was considered in the order itself. So, Your Honor, at the end of the day, when we look at the actual evidence that's presented, and we bring individuals for whom they don't actually have even residence addresses for, we end up with 41% of the plaintiff's client who actually even assert or provide a residence address in the state of Montana as of the year after the plaintiff's file was filed. And that's well below, obviously, the threshold that we need to observe. In this Court, the Ninth Circuit twice, in Montreal as well as in the King case that we cite, it's suspected that we look at this evidence with a critical eye. In those cases you had residence addresses that actually barely met the third requirement. But in those cases the Court took a critical look at that evidence and decided that based on assumptions that people moved, that some might be military members and so forth or students, that was insufficient to meet the plaintiff's third requirement. We don't even rise to that in this case. I know your time is running short. Can I have you address the principal injuries provision, at least, as to BNSF and defendant swing? Yes, Your Honor. We believe the District Court erred in four ways, Your Honor. Number one is in the interpretation of the statute. The U.S. Supreme Court in the Darts decision made clear, quoting the Senate report, that this CAFA provision should be read broadly with a strong preference in cases we heard in federal court. What the District Court did here was improperly limit the scope of its inquiry based on its interpretation of the statute. Well, in analyzing principal injuries, what do we look at? How do we define the scope of the conduct? Do we look to what the plaintiffs allege and what the evidence supports? It seems to me in this particular case that the conduct that's alleged is really the failure to contain and warn about the dangers of BNSF's transportation in and around the Libby area. Is that the appropriate scope of conduct that we look at to analyze principal injuries? Because you're pushing it beyond that, beyond the allegations in the complaint. Yes, Your Honor. I do believe the court needs to look beyond just the allegations and the complaints because the statute requires that. The statute requires that the court look at both what's alleged as well as related conduct. In the Senate report as well as cases cited to the Senate report, the court expands on that to describe that you need to be looking not at just what's alleged, but what could be alleged. Not against just the NSF, but as against every department. So in this case, if we look at what was alleged, what could be alleged, or the related conduct of the defendant, we have to then just decide, are any one of these defendants vulnerable to suit outside of the state of Montana? In this case, there are. What we believe the district court did wrong here was to take what is NSF's interstate transportation activity and then try to just artificially narrow those geographically. For example, the court misconstrues or misunderstands some of the evidence that's attached to the complaint. In trying to describe this as unique, that report actually only states that with regard to BNSF's transportation activities, being near a railway where verniculitis is being killed, or a rail line, could expose someone to an inhalation. That report doesn't say that that is unique to Libby, because in fact it's not. BNSF is transporting fuel from that place now. Fuel still on its interstate rail line. I don't Libby, Logger, Noble, Stowers, the plaintiffs have asserted, but on its interstate rail line, the same rail line that continues to carry these same cars to 180 processing sites across the country, plaintiffs have alleged. So for us to say that BNSF's transportation activities which involve carrying this verniculite across the country could be artificially limited to rolling in a car about where you carried it before, or you can't do it anymore, or everywhere else. I think that's an artificial limitation, and I don't think that's consistent with the broad way that it's attached. Certainly the broad way that it's attached. It seems that we have a statutory interpretation potentially restricting views of the Fifth Circuit and Third Circuit on how you consider the principal injury for example. My concern on the Fifth Circuit is really a lack of statutory analysis, but perhaps would you adopt the position of the Fifth Circuit? I would not, Your Honor. I think the interpretation of the other circuits and frankly the lower courts in the Ninth Circuit is correct. That we don't look at just the way a plaintiff defines the class. We look at all the harm to anyone who may be affected by the conduct or the related conduct. The Senate report even uses that odd language of look at anyone who is affected by or In this case the plaintiffs didn't or aren't asserting that they had the right to geographically limit. But they're doing the same thing or reaching the same results by trying to artificially geographically So just like it wouldn't be proper to say only Montana residents are suing for injury also not proper to say we're only talking about your transportation activities within the state of Montana. But we know that you did the transportation activities extend Both of those are artificial limitations. Both of those are allowing a plaintiff to artful even to create a new court of which both the Senate report and the case law are. Does that answer your question, Your Honor? And so while we're on that topic, Your Honor And I mentioned that the court had misconstrued that this was some type of unique activity This construction kind of extended to describing the activities of the NSF arguing, for example, that this was a local line or a local railroad as opposed to what the activities truly are. Another thing the court should do that the district court didn't do was give effect to the extrinsic evidence that was presented. Now the court hasn't adopted or ruled on whether or not this prong should or should not be included We don't believe it requires any extensive fading into the facts. We've presented very limited evidence And that evidence, I think, this is a classic case of when and why that evidence is important Because we have a situation where plaintiffs are claiming to you the court. This is a unique situation They're not aware of any injuries outside of this jurisdiction or outside of this state that it would be unlikely for anyone who's not exposed to these excessive levels of excessive exposure to have an excuse However, when we look at the extrinsic evidence, the very limited extrinsic evidence that we've presented, we see that these same plaintiffs have said the opposite. In fact, I could go through all of the extrinsic evidence we've offered, but to sum it up the evidence that's offered has shown that these plaintiffs counsel and their experts decided to report their studies The injury they attribute to the transportation and processing and use of this product in Ohio, California, Arizona, Washington New York City and 180 processing plants around the country Mr. Knight, would you like to say your remaining words? Yes, Your Honor. I'll finish with one word. Their own expert has testified on the road in response to the plaintiff's questioning that maybe disease, not just exposure, but disease extends everywhere. Thank you, Your Honor. All right. Next, Mr. McGarvey. Is that Glacier Park behind you there? It is, Your Honor. Yes. I thought I recognized that. Thank you. You may proceed. Thank you, Your Honor. The sole issue that is properly reserved for appeal is as stated in Burlington Northern's sole objection to the magistrate's first findings. Quote, whether citizens of other states could have been affected by the conduct alleged against the NSF. I have provided to the court a proposed framework for evaluating when and how a district court should look to extrinsic evidence. And I have suggested to the court that there are a test or a system of framework for balancing the need for prompt and efficient resolution of this jurisdictional question against and the time involved in a deep dive into evidence by the court. Counsel points out that the statute does indeed suggest a possible open door in that the word references related to. But I think related to usually is going to be clear from the face of the pleadings. What is the nature of the conduct that is led in the pleadings? In the case that Congress cites to of you're selling a car, a car model, obviously those car models are sold all across the country. And so the related to question can usually be resolved from the face of the pleadings. I further proposed five tests that may create a framework for a disciplined and consistent analysis of the principal injury issue. And I would like to start by pointing out that BNSF's argument utterly fails on the simplest of these tests. Unarguably, the statute does not require that all injuries be used, only that the principal injuries, which the congressional record demonstrates, could include a case where 90% of the injuries were in the state. In this case, decades after all of the defendant's conduct ceased, there's only been one case against BNSF. One case, one injury. And that case, which was contributed to by transportation activity of BNSF, where by far the majority of the plaintiff's exposure was take home from family members who worked at an expanding plant and the decedents playing on large piles of the expanding plant's tracks caused by the expanding plant's employees unloading operations. I cite you to footnote 12 of my brief for the citation for that. Similarly, there's no indication of a single injury out of the state of Montana for Maryland casualties conduct, which ended in 73, or from Montana's operations, which ended in 1986. It's now several decades later. Even with latency of the test is considered, we would have seen lots of out-of-state injuries by now if there were any, if there were to be any. But one injury has been identified by BNSF, and that injury is only marginally contributed to by BNSF. This is compared to thousands of Montana injuries arising right in the community of Libby. The easy question is where did the principal injuries occur? And the answer is in Montana. The second key point is that even in that one... So just to make sure if I understand your argument correctly, Council, I think that the railways argument on principal injuries really kind of focused on the nature of their conduct and given the transportation of it across the country, one would reasonably think that there might be similar torts that occurred in other states as well if you focus on the nature of what it was that they did in this case. But I take your argument to be that even if we focus on the nature of the conduct, there still have to be some indication in the record that in fact there were injuries of a similar nature occurring elsewhere. So had that been the record, it would have made a difference in this case? Absolutely, Your Honor. The focus should be both on the conduct and on the injury. And what is it about the conduct that would expect to cause injury in the state or out of the state? And so because BNSF is a railroad and it does transportation around the country, the leap that is trying to be suggested is that there was the same kind of contamination conduct that caused the same kind of extraordinary exposure levels that would cause these kinds of injuries. And it's simply not the case. Our case is not about transportation. It's about jumping through chutes at the loading facility with the dust piling on the cars and those cars going down a local railroad thing where the dust is blowing off and they go into the local rail yard and it gets to this incredible level and then the trains run through that level and the dust gets out at a level 140 times OSHA standards. Nothing like that happened anywhere else in the U.S. And if it had, of course, there would be injuries around the U.S. Was there testimony about that, that really this kind of concentrated arrival, deposit and then dust dump was unique to the Libby situation? It's unique to Libby, Your Honor. It's the only place where anything remotely like this happened and BNSF hasn't shown anywhere else. The closest it comes is this one case where there was another expanding facility and they had big piles at that expanding facility and you had a decedent who worked and their parent worked at the expanding facility. Of course, there's a situation. Nowhere in the U.S. were there fiber levels anywhere near the extraordinary exposures that came from the unique contamination of Montenegro. And that's the question. Was there conduct that caused injury or could have caused injury? No, there simply is not. The other thing I'd point out, Your Honor, is that the conduct alleged in that Miller case is, and I quote from the pleadings in that case, ordinary transportation activity as distinguished from loading cars, freshly loaded cars running down the Libby spur track, the Libby logger spur track, accumulations four to six feet deep. This is the conduct alleged in this complaint that creates a unique local controversy over a unique contamination and a unique pathway for injury. Of course, there were other locations around the nation where other non-defendant entities, other expanding plants, used vermiculite and may have created dangerous conditions. None of those expanding plants are defendants. And the counsel argued that the expert testified that wherever this stuff is transported, it causes disease. And if you look at the testimony, and it's in BNSF's excerpts of Record 486, you can see that what the expert actually said is the Libby disease exists wherever Libby vermiculite was shipped to and used or processed further. You have to actually encounter this dust. Transportation is not the conduct that is the creation of injurious asbestos fiber exposures. I want to make the point that these other arguments is not proper and it's a due process issue. And the reason it's a due process issue is when the magistrate makes findings and makes conclusions that are fact-based, there is a de novo hearing before the district court judge. And that is the plaintiff's opportunity to respond to the objections that the defendant makes to the magistrate's findings. There was only one basis. Sure, the district court went on to address all the elements as it appropriately should in adopting it, but there was only one objection. No opportunity, therefore, for the plaintiffs to supplement the record. This ridiculous suggestion that these people that were injured in Libby, maybe more than one-third of them moved out of Montana. Well, of course we could meet that if we were given the opportunity. We would deny that opportunity. There is one issue that is before this court. The final point, Your Honor, judges, is that there is an Article III jurisdictional problem here. This case was never intended to be a group action. The district court found that it was pled as such, but the pleading itself says that it is filed for the purposes of preserving the statute of limitations. The reason for that is that we had a whole bunch of plaintiffs that could not pursue their cases because of an injunction in the bankruptcy court of the W.R. Grace & Company. So when that bankruptcy court injunction expired, the statute of limitations started to tick and we filed this group action. And we did so recognizing that every case that we filed up to then would get split out according to cases that are appropriately tried together on common facts. But most importantly, it was filed upon recognition that Montana has not resolved the question of how do you preserve your statute of limitations once you've been diagnosed for a case in which your injuries have not yet occurred. And of course, around the country, there are deferred dockets that address this unique situation for asbestos claims. And there is now a deferred docket system in the asbestos court in Montana. But the point that I'm the NSF had jumped in, and before it was even served, removed this under CAFA jurisdiction that raised these CAFA questions, but it doesn't address the question of Article III jurisdiction. Is there a case in controversy for these plaintiffs who do not have ripe cases? They never had ripe cases. Their cases will only become ripe when their disease matures into impairment. So that has been resolved by the effect of the the Asbestos of Montana or Asbestos Claims Court determining that for these unimpaired claimants, their claims are not ripe for adjudication. And that same concern should be before this court. Do we have a controversy with a hundred or more plaintiffs that would best support the jurisdiction given this ripeness issue? This is a crazy case to be addressing CAFA questions. And it rose out of my failure to recognize that I could have split this into two place marker cases, eight with less than a hundred. I failed to recognize there was a CAFA issue. Nonetheless, this is not a case that addresses the interest of Congress that is concerned about a last action jurisdiction. The nature of the injury here it defines where the principal injuries occur. And the nature of the injury arises specifically from unique conduct that uniquely contaminated and uniquely resulted in extraordinary levels of exposure. Third, one fiber can theoretically cause an orthopedic illness. This is not a one fiber case. This is extraordinary contamination that is unique to Libby, has injured thousands of people, and only one other person has even suggested that Railroad was involved in a vermiculite related disease. Thank you. Thank you. Good night. Your Honor, first I want to address the this is not a question of whether there are more or a lot of or most of the claims within the state of Montana. This court has previously held that the question is whether or not this is a local jurisdiction where the firm is localized to a single jurisdiction or state to the exclusion. So we're not talking about, and this court shouldn't delve into trying to figure out for one state versus another. That would be difficult to do on the record right now. The thing that I think plaintiff's counsel gets backwards is who has the burden here. It is not the NSF and Mr. Swain's burden to prove that the NSF has been sued or is vulnerable to suit another state. We have produced evidence showing that is. That's a part of that bill. Therefore, we're certainly as plausible as the cases that have come to understand that the NSF is vulnerable. It was the plaintiff's burden to prove otherwise. Prove that the NSF was not a victim. We don't believe they've done that here. To artificially limit and misdescribe the NSF's transportation activities as a local movie logger's burden out of the evidence is not a complaint. It's not true factually when we're talking about what the NSF activities are. When you have a plaintiff whose own experts say any exposure to asbestos fibers medically positive of injury, whether or not it's 140 times or 10 times or 5 times, it's a right. Thank you. We're out of time unless you want me to keep talking. No, I don't. I was just kind of waiting for you to have that wrap-up sentence. I think I heard it, so thank you. Thank you for your time. The case disargued of Arstead v. DNSF Railway Company is submitted. Thank both Council for your argument. And we now will hear argument in Garcia v. SEIU.
judges: McKeown, Nguyen, Vitaliano